## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LISA MANN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-307-DWD** |
| | ) | |
| **HOSPICE OF SOUTHERN ILLINOIS INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court are Defendant's Motion to Compel (Doc. 24) and Plaintiff's Motion to Enforce Deposition Notice and for a Protective Order (Doc. 25). Each party filed a Response in Opposition to the other party's Motion. (Docs. 26 & 27). Therefore, the Motions are now ripe for a ruling. For the reasons explained below, Defendant's Motion is **DENIED** and Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

Plaintiff began working for Defendant on September 9, 2019. (Doc. 1, pg. 2). During her employment with Defendant, the COVID-19 pandemic "spread throughout the globe resulting in numerous laws, executive orders, and polices related to its spread." (Doc. 1, pg. 2). On August 26, 2021, one such executive order, Executive Order 2021-20 (COVID-19 Executive Order No. 87), was issued to impose vaccination requirements on health care workers. (Doc. 1, pg. 2). Defendant allegedly considered Plaintiff an essential healthcare worker, as defined by that Executive Order. (Doc. 1, pg. 3). Plaintiff disputes

1

this designation "because she worked in marketing and could work from home, particularly since, at the time, there were few if any in-person events." (Doc. 1, pg. 4).

Section 2(e) of Executive Order 2021-20 (COVID-19 Executive Order No. 87) provides: "Individuals are exempt from the requirement to be fully vaccinated against COVID-19 if…vaccination would require the individual to violate or forgo a sincerely held religious belief, practice, or observance. Individuals who demonstrate they are exempt from the vaccination requirement shall undergo, at a minimum, weekly testing as provided for in Subsection (d)." (Doc. 1, pg. 3). Under Section 2(d), "[b]eginning 10 days after issuance of this Executive Order, to enter or work at or for a Health Care Facility, Health Care Workers who have not been fully vaccinated against COVID-19 must undergo testing for COVID-19." (Doc. 1, pg. 3). Defendant allegedly adopted a policy that required COVID-19 vaccinations by September 19, 2021. (Doc. 1, pg. 4).

On September 3, 2021, Plaintiff allegedly submitted a request for a religious exemption under Section 2(e) of Executive Order 2021-20 (COVID-19 Executive Order No. 87). (Doc. 1, pg. 4). Defendant's Human Resource ("HR") Department allegedly requested "additional documentation or a statement from [Plaintiff's] church or pastor" on September 7, 2021. (Doc. 1, pg. 4). On September 13, 2021, Plaintiff allegedly complied with this request by submitting a letter from her pastor to Defendant's HR Department. (Doc. 1, pg. 5). In a meeting with members of the HR Department on September 15, 2021, "Plaintiff was handed a letter stating her employment would be terminated if she did not comply with being vaccinated." (Doc. 1, pg. 5). Also, despite allegedly acknowledging the sincerity of Plaintiff's request for a religious exemption, Defendant declined to accept

2

COVID-19 testing as an alternative to vaccination. (Doc. 1, pg. 5). Although testing could allegedly occur at no cost to Defendant, it indicated to Plaintiff that "such an accommodation would be an undue burden on Defendant." (Doc. 1, pg. 5).

Plaintiff refused to receive the COVID-19 vaccination due to the conflict with her sincerely held religious belief. (Doc. 1, pg. 5). Therefore, on September 19, 2021, Defendant terminated her employment. (Doc. 1, pg. 5). Plaintiff alleges, by failing to accept free weekly testing as an alternative to vaccination, Defendant deprived Plaintiff of the option to meet a condition of employment that subsequently resulted in her termination. (Doc. 1, pg. 6). Likewise, it was this "denial of a reasonable, least restrictive, and mandated alternative" that caused Defendant's noncompliance with Executive Order 2021-20 (COVID-19 Executive Order No. 87). (Doc. 1, pg. 6). As a result, Plaintiff initiated this case with the filing of a 2-Count Complaint, alleging religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (Count I) and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-101(F) (Count II).

## II. ANALYSIS

On October 5 and 6, 2023, respectively, Defendant submitted a Written Discovery Report and Plaintiff submitted a separate Response. (Docs. 22 & 23). By the parties' own admissions, the submissions failed to comply with the Court's Case Management Procedures. (Docs. 22 & 23). As such, on October 11, 2023, they were directed to meet, confer, and report on all discovery disputes in a manner that complied with those Case Management Procedures. (Docs. 22 & 23). The parties did so; therefore, on December 18,

2023, the Court granted each party leave to file a motion to compel, as additional briefing was necessary to resolve the parties' discovery disputes. (Doc. 23).

Now, each party has filed a Motion pursuant to the above Order. After outlining the governing legal principles, the Court separately resolves each Motion.

## A. Governing Legal Principles

Under Federal Rule of Civil Procedure 26(b)(1), the scope of discovery, unless otherwise limited by the Court, is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and [is] proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The Court has "extensive discretion" to decide discovery matters. *Motorola Solutions, Inc. v. Hytera Comms. Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019); *see also Searls v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995) ("Because the district court is far better situated to pass on discovery matters, [the Seventh Circuit] review[s] its discovery decisions for an abuse of discretion."). Courts may refuse discovery of matters that are "of 'marginal relevance,'" and it is an assessment of proportionality that is essential. *Motorola Solutions, Inc.*, 365 F. Supp. at 924 (citation to internal quotations omitted); *see also Armour v. Santos*, No. 19-cv-678, 2022 WL 16572006, *2 (S.D. Ill. Nov. 1, 2022) (stating "relevancy" is broadly construed to encompass matters bearing on, or reasonably

4

leading to matters bearing on, issues in the case, and "proportionality" requires a common sense, experiential, careful, and realistic assessment of the actual need). Decisions on motions to compel discovery are also within the Court's broad discretion. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (citing *Meyer v. Southern Pacific Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001)). When ruling, " 'courts have consistently adopted a liberal interpretation of the discovery rules.' " *Id*. (quoting *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 375 (N.D. Ill. 1999)); *accord Traffix USA, Inc. v. Bay*, No. 21-cv-2093, 2022 WL 2046282, *2 (N.D. Ill. June 7, 2022).

Further, under Federal Rule of Civil Procedure 30(b)(6), "[i]n its notice or subpoena, a party…must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." *Id*. The corporation then "has the duty to 'make a conscientious good faith effort to designate the persons having knowledge of the matters sought by the [discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters.' " *Id*.; *Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547-48 (N.D. Ill. 2008) (quoting *Buycks-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 342 (N.D. Ill. 1995)). The deponent must "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6); *Wachovia Sec., LLC*, 248 F.R.D. at 547-48 (quoting *Beloit Liquidating Trust v. Century Indem., Co.*, No. 2-cv-50037, 2003 WL 355743, *2 (N.D. Ill. Feb. 13, 2003)). Implicit in Rule 30(b)(6) designations is the notion that "the

5

witness will be able *and* willing to answer questions relating to the information sought."
*Id*. at 548 (Emphasis in original). Also, Federal Rule of Civil Procedure 37(a)(3)(B)(ii)
states: "A party seeking discovery may move for an order compelling an answer,
designation, production or inspection. This motion may be made if…a corporation or
other entity fails to make a designation under Rule 30(b)(6)." Fed. R. Civ. P. 37(a)(3)(B)(ii).

### B. Defendant's Motion to Compel

At issue are four of Defendant's Requests for Production. (Doc. 24, pg. 2). Plaintiff
alleges, "[a]s a proximate cause of Defendant's discriminatory actions, [her] physical
health suffered." (Doc. 1, pgs. 9, 11). Thus, in Request 46, Defendant seeks: "All medical
records related to the harms to Plaintiff's physical health as identified in Paragraphs 49
and 66 of the Complaint. In lieu of producing these documents, you may execute the
attached medical records release, for the applicable treating providers and dates, to
enable Defendant to acquire such documents." (Doc. 24-2, pg. 16). In a Response, Plaintiff
stated she was not "in possession of any documents responsive to this request." (Doc. 24-
2, pg. 16). In a Supplemental Response, Plaintiff stated she "did not receive any treatment
as a result of her employment or discrimination with Defendant." (Doc. 24-2, pg. 16).

Plaintiff also alleges, "[a]s a proximate cause of Defendant's discriminatory
actions, Plaintiff suffered humiliation, anxiety, mental anguish, and emotional distress."
(Doc. 1, pgs. 9, 11). As such, in Request 47, Defendant seeks: "All medical records related
to the harms to Plaintiff's 'humiliation, anxiety, mental anguish, and emotional distress,'
as identified in Paragraphs 50 and 67 of the Complaint. In lieu of producing these
documents, you may execute the attached medical records release, for the applicable

6

treating providers and dates, to enable Defendant to acquire such documents." (Doc. 24-2, pg. 16). In a Response, Plaintiff objected on the basis that Request 47 "is vague, overbroad, and not narrowly tailored." (Doc. 24-2, pg. 16). Plaintiff explained that she "is claiming garden variety emotional distress." (Doc. 24-2, pg. 16). In a Supplemental Response, Plaintiff stated she "did not receive any treatment as a result of her employment or discrimination with Defendant." (Doc. 24-2, pg. 17).

Due to Plaintiff's allegations of "humiliation, anxiety, mental anguish, and emotional distress," Request 48 also seeks: "All documents relating to any medication prescribed to you for any treatment related to your alleged 'humiliation, anxiety, emotional distress, [or] mental anguish…,' as alleged in Paragraphs 50 and 67 to your Complaint, including, but not limited to, any documents that reflect the name of such medication, its dosage, the date(s) on which it was prescribed, and the identity of the prescribing doctor." (Docs. 1, pgs. 9, 11; 24-2, pg. 17). In a Response, Plaintiff stated she "is not currently in possession of any documents responsive to this request." (Doc. 24-2, pg. 17). In a Supplemental Response, Plaintiff stated she "did not receive any treatment as a result of her employment or discrimination with Defendant." (Doc. 24-2, pg. 17).

Finally, Request 49 states: "Plaintiff shall complete and execute the attached Medical Records Authorization and Psychotherapy Records Authorization…and return it to counsel for Hospice at the same time that Plaintiff's Responses are submitted hereto." (Doc. 24-2, pg. 17). Plaintiff objected, claiming irrelevance and an "invasion of privacy." (Doc. 24-2, pg. 17). Plaintiff stated she "is claiming garden variety…emotional distress[,] which does not implicate her medical records." (Doc. 24-2, pg. 17). In a Supplemental

Response, Plaintiff also stated she "did not seek any medical treatment or psychotherapy treatment for the discrimination she experienced while working for Defendant. Therefore, she is not signing any medical records authorizations." (Doc. 24-2, pgs. 17-18).

In light of Plaintiff's allegations, Defendant argues any objections to producing the documents, sought by Requests 46, 47, 48, and 49, are baseless or have been waived by Plaintiff. (Doc. 24, pg. 3). Defendant posits, "[a]lthough Plaintiff may be claiming that she is only seeking 'garden variety' emotional distress, Plaintiff has waived medical privileges by virtue of her very own pleadings and her request for such damages, and has thereby placed her psychological state at issue in the lawsuit." (Doc. 24, pg. 3). Even if Plaintiff did not seek treatment related to the religious discrimination at issue in this case, Defendant argues other medical factors, contributing to Plaintiff's alleged emotional distress or related to this case, may be gleaned from the requested records. (Doc. 24, pg. 3). As such, Defendant argues the records are relevant and discoverable. (Doc. 24, pg. 3).

In Response, Plaintiff argues none of the authorities relied upon by Defendant stand for the proposition that it may compel "all of Plaintiff's 'physical health' records to search for mere general statements" or engage in "a fishing expedition to try to find records…[with] relevant information." (Doc. 26, pgs. 3, 6). Plaintiff illustrates the alleged absurdity of such a request, stating "Defendant would not reasonably want Plaintiff's OB/GYN records, but Defendant is apparently seeking the same." (Doc. 26, pg. 3). Plaintiff emphasizes that she did not specifically seek any medical treatment related to this case and she does not intend to call a physician to support an emotional distress

claim. (Doc. 26, pgs. 3-6). Therefore, in Plaintiff's view, allowing Defendant to sift through her medical records would only serve to harass and embarrass Plaintiff. (Doc. 26, pg. 5).

Here, the Court agrees with Plaintiff on the Requests at issue. For one thing, it appears Plaintiff provided responsive answers by explaining she did not possess responsive documents or receive treatment due to her employment with or discrimination by Defendant. (Doc. 24-2, pgs. 16-18). Plaintiff now represents to the Court that she did not seek medical treatment related to the case and she does not intend to call a physician to support an emotional distress claim. (Doc. 26, pgs. 3-6). Notably, Plaintiff also does not specifically seek damages for emotional distress. (Doc. 1, pg. 11).

Alternatively, while it may be the case that Plaintiff alleged that her physical and mental health suffered due to Defendant's alleged conduct, those general allegations do not give Defendant license to demand documents pursuant to unnecessarily overbroad and disproportionate Requests. That tends to be the case here, as Defendant seeks "[a]ll medical records," "[a]ll documents," and a blanket "Medical Records Authorization and Psychotherapy Records Authorization" without any limitation in time or scope other than references to the Complaint. *See Davis v. Mitchell*, No. 19-cv-3212, 2022 WL 2073010, *2 (N.D. Ill. June 9, 2022) ("Completely open-ended discovery requests without time limitations rarely, if ever, withstand scrutiny.") (collecting cases); (Doc. 24-2, pgs. 16-17). In short, the Requests under consideration are likely to capture much more of Plaintiff's medical information than could possibly be necessary in light of the issues in the case. The Court understands Defendant's interest in such documents due to Plaintiff's general allegations and Defendant's likely concern with learning about and investigating any pre-

existing contributing conditions, but it will not sanction a boundless search of her medical history, especially where Plaintiff, again, has represented that she does not possess any responsive documents, she did not receive any treatment related to her employment with or discrimination by Defendant, and she does not intend to call a physician to support an emotional distress claim. (Docs. 24-2, pgs. 16-18; 26, pgs. 3-6). Of course, it will be Plaintiff who must suffer the effects of deviations from these representations later in the litigation.

Therefore, Defendant's Motion to Compel is **DENIED**. If Defendant persists in the belief that revised versions of Requests 46, 47, 48, and 49 are necessary, despite Plaintiff's responses and the above discussion, then the parties are **DIRECTED** to meet and confer on the ways in which those Requests may be narrowed in scope to encompass only documents or records that are relevant and proportional to the needs of the case. The parties are encouraged to resolve the issues without further involvement of the Court; however, if they cannot do so, then they are **DIRECTED** to again fully comply with the "Discovery Disputes" provisions on pages 3 and 4 of the Court's Case Management Procedures. *See* https://www.ilsd.uscourts.gov/sites/ilsd/files/Dugan.pdf. The Court emphasizes, though, it will not relitigate matters resolved in this Memorandum & Order.

## C. Plaintiff's Motion to Enforce Deposition Notice
## and for a Protective Order

Plaintiff submits, on May 11, 2023, she served a Notice of Deposition on Defendant under Rule 30(b)(6). (Doc. 25, pgs. 1-2). In the Notice of Deposition, Plaintiff identified 17 matters for examination, which Plaintiff does not now discuss in detail. (Doc. 25, pg. 2). The corporate representative deposition was scheduled for June 19, 2023. (Doc. 25, pg. 2).

However, following the service of the Notice of Deposition, Defendant objected, arguing the Notice of Deposition "was arbitrarily filed without seeking to agree on a date and time" or the topics. (Doc. 25, pg. 2). Without waiving any objections, Defendant allegedly agreed to produce a corporate representative at a mutually agreeable date and time. (Doc. 25, pg. 2). Defendant allegedly responded to Plaintiff's discovery requests in mid-2023 without mentioning a date for the corporate representative deposition. (Doc. 25, pg. 2). It allegedly "continued to avoid providing dates by asking for Plaintiff's deposition dates and submitting discovery letters, while never providing dates for its representative." (Doc. 25, pg. 2). To date, Defendant has allegedly failed to provide dates and the identity of an individual for a corporate representative deposition, despite Plaintiff "temporal[ly] limit[ing] as well as narrow[ing]…several topics." (Doc. 25, pg. 3). As a result, Plaintiff seeks an order compelling the corporate representative deposition, the costs of preparing this Motion, and a protective order under Rule 26(d) that requires the taking of the corporate representative deposition before Plaintiff's deposition. (Doc. 25, pgs. 3-4).

In Response, Defendant argues Plaintiff "provides a false narrative…on the history of events." (Doc. 27, pg. 1). In fact, Defendant represents to the Court that it has no objection to the order of depositions requested by Plaintiff, namely, the taking of a corporate representative deposition prior to the taking of Plaintiff's deposition. (Doc. 27, pgs. 3-4). Defendant does, however, challenge four topics noticed by Plaintiff for the corporate representative deposition. (Doc. 27, pgs. 6-9). Defendant argues each topic is overbroad, unduly burdensome, irrelevant to the factual allegations and legal issues in the case, vague, and/or disproportionate to the needs of the case. (Doc. 27, pgs. 6-9).

Here, in light of Defendant's representation that it does not object to Plaintiff's desired order of depositions, the Court declines to referee the parties' competing counteraccusations, which are particularly unhelpful to resolving their discovery disputes. Consistent with that representation, the Court **GRANTS** Plaintiff's request for the corporate representative deposition to occur before the deposition of Plaintiff. Unless the parties can stipulate to an alternative arrangement, they are **DIRECTED** to conduct the depositions in that order. Also, within 10 days of this date, if it has not already done so, Defendant is **DIRECTED** designate its corporate representative and confer with Plaintiff on a date and time for the deposition. *See* Fed. R. Civ. P. 37(a)(3)(B)(ii).

Beyond this nonissue, Plaintiff's Motion is **DENIED** as to the request for costs and Topics 6, 13, 16, and 19 of the Notice of Deposition. (Doc. 27-1, pgs. 3-4). The Court agrees with Defendant on the issues as to those Topics, which Plaintiff describes as follows:

> 6. Policies, procedures, and practices for conducting performance reviews or compensation reviews during the period for the time period of Plaintiff's employment, two years before Plaintiff was hired, and for two years after Plaintiff's and Defendant's employment relationship ended, changes to such policies, procedures, and practices, and the decision makers involved in performance review or compensation reviews, including those who provided input and those who had final authority.

> 13. Policies, procedures, and practice regarding the orientation and training of new employees, the materials provided new employees during orientation or training, and the staff involved in orientation or training.

> 16. HOSPICE's record-keeping and document retention policies, procedures, and practices.

> 19. The facts and circumstances concerning HOSPICE's collection and production of documents in this litigation.

(Doc. 27-1, pg. 4).

In light of the allegations contained in the Complaint, it is unclear to the Court how Topics 6 and 13 are in any way relevant or proportional to the needs of the case. For example, Plaintiff has not argued she was terminated for issues related to performance or compensation rather than a refusal to obtain a COVID-19 vaccination, as might implicate Topic 6. Similarly, Plaintiff has not argued she was inadequately oriented to or trained for employment with Defendant, as could implicate Topic 13. Finally, as to Topics 16 and 19, Plaintiff has in no way described the topics with reasonable particularity, as required by Rule 30(b)(6). It is not difficult to imagine the wide reach of Topic 16 for an entity like Defendant, or the disconnect between certain of its record-keeping or document retention policies and the particular allegations of Plaintiff. Topic 19 is similarly overbroad, vague, and possibly privilege-invoking, as Plaintiff does not articulate what facts and circumstances concerning Defendant's collection and production of documents warrant examination. To be clear, this is not to say the Topics, particularly Topics 16 and 19, cannot be written with reasonable particularity to capture information that is obviously relevant and proportional to Plaintiff's claims. It is merely the way in which the Topics are presently drafted that runs afoul of the discovery rules.

For these reasons, Plaintiff's Motion is **GRANTED in part** and **DENIED in part**. If Plaintiff insists on deposing a corporate representative on Topics 6, 13, 16, and 19, then the parties are **DIRECTED** to meet and confer on the ways in which those Topics may be better described to address the issues of relevancy, proportionality, scope, and vagueness identified in this Memorandum & Order. *See* Fed. R. Civ. P. 30(b)(6). As stated above, the

parties are encouraged to resolve the issues without further involvement of the Court; however, if they cannot do so, then they are **DIRECTED** to again fully comply with the "Discovery Disputes" provisions on pages 3 and 4 of the Court's Case Management Procedures. *See* https://www.ilsd.uscourts.gov/sites/ilsd/files/Dugan.pdf. The Court again emphasizes, though, it will not relitigate matters resolved in this Memorandum & Order.

### III. CONCLUSION

For the reasons explained above, Defendant's Motion is **DENIED** and Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

**SO ORDERED.**

Dated: April 26, 2024.

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge